GRACE PORTER ROBINSON, GEORGIA NEWMAN, SOMETIMES KNOWN AS G. NEWMAN, ARTHUR L. WHITE, WILLIAM M. KEARNEY, HOWARD McKISSICK, JOHN DOE, ET ALS., DEFENDANTS AND APPELLANTS, *v.* JAMES T. McKAY AND ALTA M. McKAY, PLAINTIFFS AND RESPONDENTS.

No. 3619

July 13, 1951.                                    233 P.2d 861.

*Kearney & Adams,* of Reno, for Appellants.

*George L. Sanford* and *John R. Ross,* both of Carson City, for Respondents.

## OPINION

By the Court, EATHER, J.:

A statement of the factual background of this case is as follows: For many years the plaintiffs, husband and wife, operated certain ranching property situate in Smith Valley, in Lyon County, owning two parcels of land referred to as the "Tidd Place," consisting of 124 acres, and the "Mann Place," consisting of 14 acres. Both parcels of land were within the Walker River Irrigation District and subject to assessment for the benefits conferred by the irrigation district.

The two parcels of land, that is the "Tidd Place" and the "Mann Place," were each separately assessed on the state and county assessment roll for the year 1941, each having its own separate roll number. While a "split" assessment was permitted on the state and county assessment roll that practice was not permitted on the assessment roll of the Walker River Irrigation District, consequently both the "Tidd Place" and the "Mann Place" were consolidated in one single assessment in the irrigation district roll. Section 8041, N.C.L.1929, as amended, provides that the secretary of an irrigation district shall make up the assessment roll of the district, and, on or before October 15 of each year, certify a duplicate of the roll in its entirety to the county treasurer. The county treasurer then incorporates the irrigation district assessment roll into the general roll. Section 8041 then proceeds:

"* * * The assessments when levied and enrolled shall become due and delinquent at the same time and be subject to the same penalties and shall be collected by the same officers and in the same manner as state and county taxes. The county auditor, district attorney, clerk and treasurer shall do and perform all acts necessary to accomplish the collection of the same with penalties, the sale for delinquency, the redemption of the

lands involved, and the remittance of all proceeds to the district treasurer. * * *"

Such was the situation when the McKay lands (Tidd and Mann) became tax delinquent for state and county taxes and irrigation district assessments levied for the year 1941.

In that year, 1941, the McKay lands became tax delinquent by reason of failure to pay (1) the state and county taxes as shown on the state and county assessment roll, and (2) also because of failure to pay the assessment of the Walker River Irrigation District as shown by the assessment roll of the irrigation district as the same had been certified by the secretary of the district to the county treasurer, and by him incorporated into and made a part of the official assessment roll. Section 8041, N.C.L.1929, as amended.

Section 6442, N.C.L.1929, as amended, provides that the payment of the last quarter of taxes levied for the previous year shall be paid on or before the first Monday in August, and that at the close of business on the first Monday in August (of the year following that for which the taxes were levied) the ex officio tax receiver shall designate as "delinquent" on the assessment roll all property on which any taxes then remain unpaid.

This procedure was followed and on the first Monday in August, 1942, the ex officio tax receiver marked the McKay lands as "delinquent" for state and county taxes and for assessments of the Walker River Irrigation District levied for the year 1941. As a result of this delinquency the McKay lands were sold as "Tax delinquent property" on the second Monday in September, 1942, being September 14. At the sale one Georgia Newman, sometimes known as G. Newman, bid the lands in for the then delinquent state and county taxes and irrigation district assessments, together with interest, penalties and costs, and a certificate of sale was thereupon issued to the said G. Newman. All this was done pursuant to the directions of section 6447, N.C.L.1929, as amended.

From the date of the issuance of the certificate of sale

to G. Newman on September 14, 1942, not one act was done by the proper officers of Lyon County which would apprise the McKays, or anyone else for that matter, of the fact that the McKay lands had been sold for state and county tax delinquencies and irrigation district assessments and that unless redeemed before the expiration of the two-year period of redemption expired (Sec. 6447), title to the McKay lands would be lost.

It will be observed that section 6448, N.C.L.1929, reads as follows:

"After receiving the amount of taxes, penalty and costs, the treasurer shall make out in duplicate a certificate, dated on the day of sale, stating (when known) the name of the person assessed, a description of the land sold, the amount paid therefor, that it was sold for taxes, giving the amount and year of the assessment, and specifying the time when the purchaser will be entitled to a deed, if the land is not sooner redeemed; provided, that if no one else shall bid upon any piece of land at such sale, the treasurer shall bid the same in for the benefit of the county and state, and file a certificate thereof with the county recorder; and the same shall be subject to redemption from the treasurer the same as from a private purchaser; and if not redeemed, the title thereto shall vest in the county for the benefit of the county and state, and may be disposed of as provided by law. Until the period of redemption as provided by law has expired, the property described in the certificate of sale shall be assessed to the person named in such certificate of sale, and before redemption by the owner thereof such certificate holder shall be reimbursed for any additional taxes thereon he may pay, together with interest thereon as provided by law. One of the duplicate certificates of sale issued by the treasurer, in case of a private purchaser, shall be filed in the office of the county recorder."

The record indicates that no such "duplicate" certificate of sale was ever or at all "filed" by the county treasurer in the office of the county recorder. The fore-

going section (6448) also requires that "until the period of redemption as provided by law has expired, the property described in the certificate of sale shall be assessed to the person named in such certificate."

The record indicates that the McKay property was never or at all assessed in the name of G. Newman, the holder of the certificate of sale. On the contrary, the property at all times during the period of redemption continued to be assessed to James T. and Alta McKay, and so appeared in the assessment roll of Lyon County in the same manner as it had been assessed prior to and during the year 1941, in which year it went delinquent for state and county taxes and Walker River Irrigation District assessments.

On or about the first day of August, 1944, Alta McKay telephoned the office of the county treasurer and ex officio tax receiver and inquired of that office the full amount of money to be paid to redeem the lands prior to the expiration of the two-year period of redemption which would be on September 14, 1944. The office not having the required information at hand advised Alta McKay that, after checking the assessment rolls she would be advised by letter.

Under date of August 5, 1944, a letter was written to Alta McKay by the office of the county treasurer and ex officio tax receiver in which it was set out that the full amount necessary and required to redeem the lands in question was the sum of $106.77.

It appears that immediately upon the receipt of the letter above set out the McKays forwarded the sum of $106.77 to the ex officio tax receiver, receiving from him his official receipt.

The record indicates that the office of treasurer and ex officio tax receiver in checking the assessment rolls of Lyon County for the purpose of securing the information to be forwarded to the McKays, failed and neglected to examine and check the assessment roll made up by the Walker River Irrigation District, and incorporated into state and county roll as provided by section 8041,

N.C.L.1929, as amended. As a result of this oversight the letter written to Alta McKay on the 5th of August, 1944, made no mention of the fact that in addition to the 1941 delinquent state and county tax, plus penalties, interest and costs (which amounted to $106.77) there was also due the assessment of the Walker River Irrigation District for the year 1941, together with penalties, interest and costs, amounting to an assessment of $46.89 plus $6.91 by way of penalties, interest and costs.

As a result of this situation the McKay lands, having been redeemed for the full amount of state and county taxes plus penalties, interest and costs in the amount of $106.77, continued to be delinquent and unredeemed for irrigation district assessments plus penalties, interest and costs in the amount of $53.80.

The foregoing recitals give the factual picture as of October 18, 1944, on which date Walter Whitacre, county treasurer and ex officio tax receiver issued a "tax" deed from Lyon County to G. Newman. Thereafter and on December 7, 1944, Georgia Newman conveyed the same lands to one Howard McKissick.

According to the record the McKays knew nothing of Georgia Newman and/or Howard McKissick until on or about the 7th day of December, 1944, when they received a letter from McKissick to the effect that he was the owner of certain specifically described lands and requested that they vacate the same. Even then the McKays had no knowledge that G. Newman had received a tax deed to their lands for the reason that the McKissick letter referred to lands other than the "Tidd Place" and the "Mann Place." As a result of the McKissick letter the McKays made further inquiry as to the status of their land and the matters hereinabove related became known to them.

Thereafter an action was commenced in the First Judicial District Court of the State of Nevada, in and for the County of Lyon, by the plaintiffs, James T. McKay and Alta McKay, filing on the 18th day of July, 1945, a complaint to quiet title to their farm lands (being

the "Tidd and Mann" places above mentioned). Answers were filed by the various defendants. That of McKissick, with which we are principally concerned, asserted title by virtue of the tax deed.

The plaintiffs then filed their separate replies to each of the answers. The reply to the answer of the defendant Howard McKissick admitted the deed of December 7, 1944, to McKissick from G. Newman, and the tax deed from Lyon County to G. Newman on the 18th day of October, 1944, but denied that said G. Newman ever or at all had any right, title, or interest in or to the said premises, or ever was the owner thereof, or ever entitled to possession, and denied that on the 7th day of December, 1944, being the date of the deed from Georgia Newman to McKissick, or at any time thereafter, said Howard McKissick became the owner, or became entitled to the possession of said lands.

In plaintiffs' reply to the answer of G. Newman plaintiffs admitted the execution of the tax deed on October 18, 1944, but denied that it was issued in conformity with the provisions of the statutes applicable thereto and that therefore the said G. Newman and Howard McKissick, to whom she executed her deed on the 7th day of December, 1944, acquired no right, title or interest in the lands.

The defendants, Howard McKissick, Georgia Newman, and Grace Porter Robinson, each separately demurred to the replies filed to their respective answers. Each of said defendants also moved to strike certain portions of the replies.

The case was assigned to the Hon. Wm. D. Hatton, and the demurrers and motions argued before him, after which he made and filed his ruling thereon, sustaining demurrers upon the ground that the reply failed to point out clearly or specifically the defects which, it was contended, invalidated the tax title of defendants.

Following the ruling of the trial court sustaining the several demurrers, the plaintiffs filed "amended" replies. These amended replies as directed to the answers of

Howard McKissick and Georgia Newman alleged that the purported tax deed to Georgia Newman of date October 18, 1944, was void for the reason that the treasurer and ex officio tax receiver had (a) failed and neglected to publish the notice required by section 6440, N.C.L.1929, as amended, for the time and manner required by law; (b) failed and neglected to comply with the provisions of section 6442, N.C.L.1929, as amended; (c) failed and neglected to comply with the provisions of section 6447, N.C.L.1929, as amended; (d) failed and neglected to comply with the provisions of section 6444, N.C.L.1929, as amended; (e) failed and neglected to comply with the provisions of section 6448, N.C.L.1929, in that the lands referred to had never been assessed to Georgia Newman, to whom the certificate of sale had been issued; and (f) had failed and neglected to comply with the provisions of section 6449, N.C.L.1929, as amended.

In addition to the foregoing allegations each of the amended replies contained the following allegation:

"Plaintiffs further allege that said purported tax deed was and is void, and of no force and/or effect whatsoever for the reason that it recites that the premises referred to in said deed were tax delinquent for the year 1941, whereas the plaintiffs had paid to Walter Whitacre, Treasurer and ex-officio Tax Collector, as aforesaid, the taxes on the premises described in the complaint for said year 1941; that by reason of said payment for said 1941 taxes the premises referred to in said tax deed, were not delinquent and subject to sale for delinquent taxes on the 14th day of September, 1942, and were not tax delinquent and were not subject to sale for tax delinquencies on the 18th day of October, 1944, on which date the purported tax deed was issued to Georgia Newman."

To the amended replies Georgia Newman, Howard McKissick, and Grace Porter Robinson, again demurred. On December 16, 1946, Judge Hatton ruled on the demurrers as follows:

"* * * The amended replies respectively state a defense to the new matter set up in the answers. It is

therefore ordered that the demurrers of the defendants are overruled."

After the trial of the case on the issues made by the pleadings as above set out Judge Hatton rendered his decision on the 6th day of July, 1948.

After deciding the first two points upon which the plaintiffs had defended against the tax deed issued to Georgia Newman on the 18th day of October, 1944, the court said:

"We proceed to the plaintiffs' third defense to the tax deed, namely, the claim of an equitable redemption. In August of 1944, Mrs. Alta McKay telephoned the County Treasurer inquiring relative to the taxes on the Tidd and Mann places. * * *" (Here follows a recital of Alta McKay's testimony on this point.)

Judge Hatton's opinion continued as follows:

"The general rule of law on the subject (of equitable redemption) is stated in 61 C.J. 961, Sec. 1237, as follows: 'It is a general rule that where a property owner in good faith applies to the proper officer for the purpose of paying his taxes, and such payment is frustrated by mistake, negligence, or other fault of the officer, the attempt to pay is equivalent to actual payment' * * *

"The County Treasurer being the officer who makes tax sales, it is obvious that he is the proper person to whom payments may be made upon a redemption for tax sale. It being his duty to receive such payments, we must conclude that it also is his duty to properly inform any inquiring property owner as to the amounts due upon any delinquency. * * *

"In August, 1944, when the inquiry (by Alta McKay) referred to was made, it was necessary for the Treasurer to consult the roll for 1941. There, on irrigation roll No. 1730, appeared the entry (See trans. 17) 'delinquent, advertised and sold' and further notation, 'to G. Newman' (Trans. 18). It is evident therefore, that the data was, or should have been, available in the office of the County Treasurer to enable him to perform his duty

and to give Mrs. McKay the correct amount of the delin-
quencies on the property. * * *

"Objection is made by the defendants as to the scope
of the inquiry made by Mrs. McKay, it being claimed
that she did not ask for the amount of the delinquencies
on tax sales, or the amount required to redeem, but that
her inquiry pertained only to unpaid taxes. It is perhaps
technically true that where property has been sold at
delinquent tax sale and the price paid, covering taxes
and additional charges, the tax is deemed to have been
paid. The term 'delinquency', however, particularly as
used by a layman, as applied to tax matters, compre-
hends a broader scope than technical tax delinquencies.
* * *"

The question raised by appellants on this appeal, and
with which this court is now particularly interested, was
commented upon by Judge Hatton in his decision as
follows:

"It has been suggested by defendants' brief that there
is a fatal variance with respect to the proofs admitted
relative to the efforts made by plaintiffs to redeem the
property from the sale for irrigation district taxes for
the year 1941. This defense is not set forth definitely
in plaintiffs' replies. * * * The second demurrers,
general in their nature, were overruled for the reason
that plaintiffs alleged payment of the taxes for 1941,
and the case proceeded to trial. The question now arises
as to whether there is a fatal variance as to the allega-
tion of payment of taxes for 1941 and the proofs
relative to equitable redemption. * * * It will be
noted that defendants' objections are made on the
ground that proofs offered were irrelevant, immaterial,
self-serving and an attempt to impeach the county
clerk's office. There was no motion for non-suit.

"In the case of Kirshner v. Sganzini, (134 A.L.R.
1290, annotation 1299), referred to above, syllabus 3, it
is held that 'The redemption of tax sale certificates held
by the state amounts to a payment of taxes.' In the case

at bar, the tax certificate was held by a third person, Georgia Newman; but, upon a liberal view at least, the proof of an equitable redemption would come within the general scope and meaning of an allegation of payment. It has been held that the objection that evidence is incompetent, irrelevant and immaterial is general in its nature and does not go to the question of variance. Levinson v. Home Bank and Trust Co., 337 Ill. 241, 169 N.E. 193, cited 64 C.J. 190, note 61 (a). There appears to be nothing in the record to indicate that the defendants were mislead to their detriment in the presentation of their proofs. 21 Cal.Jur. 264, sec. 184.

"Under the liberal rule as established in the case of Burgess v. Helm, 24 Nev. 242, 51 P. 1025, and the case of Marks v. Roberti, 51 Nev. 150, 271 P. 467, this court takes the view that the variance between the allegation of payment and the proof of equitable redemption is not so substantial, upon the record here, as to preclude the defense referred to, though not specifically alleged."

On the basis of the decision, findings of fact and conclusions of law were made and judgment entered quieting title to the lands described in the complaint, in the plaintiffs. Certain of the defendants then moved for a new trial, which motion was denied and thereupon this appeal was taken.

In view of the position taken by this court, as hereinafter expressed, it is not necessary to consider any of the specifications of error set out by defendants, appellants here, with the single exception of specification of error No. 4, which is to the effect that—

"The Court erred in holding that the plaintiffs had interposed a third defense on the theory of equitable redemption, when as a matter of fact the reply merely alleged a defense that 'the taxes [on the property] were not delinquent and [the property was not] subject to sale for delinquent taxes on the 14th day of September, 1942'."

The court feels that there is merit to defendants'

specification of error No. 4, and that they are entitled to know by way of the plaintiffs' replies the particular defenses upon which plaintiffs were to rely at time of trial, and upon which they would offer proof. The court therefore holds that the defense of equitable redemption was not properly pleaded and for that reason a new trial should be granted. In view of the record in this case the court is impressed with the apparent need for the intervention of equity and is of the opinion that justice would be best served by permitting the plaintiffs, respondents here, prior to a new trial, to amend their replies in accordance with the views herein expressed. The case is remanded to the trial court to permit the plaintiffs, respondents here, to amend, and for a new trial on the amended pleadings.

It is so ordered.

BADT, C. J., and MERRILL, J., concur.